No. 23-3177

---

## In the United States Court of Appeals for the Third Circuit

_____

CHARLES ADLER, ET AL.,
*Plaintiffs-Appellants*,

v.

GRUMA CORP.,
*Defendant-Appellee.*

_____

On Appeal from the U.S. District Court for the District of New Jersey,
Case No. 3:22-cv-06598-RK-DEA (Honorable Robert Kirsch)

_____

### APPELLANTS' REPLY BRIEF

_____

Hannah M. Kieschnick
PUBLIC JUSTICE
475 14th St., Ste. 610
Oakland, CA 94612
(510) 622-8150
hkieschnick@publicjustice.net

Shelby Leighton
PUBLIC JUSTICE
1620 L St. NW, Ste. 630
Washington, DC 20036
(202) 797-8600
sleighton@publicjustice.net

Stephen J. Brown
Susan E. Galvão
David Chen
BLEAKLEY PLATT & SCHMIDT, LLP
One North Lexington Ave.
White Plains, NY 10601
(914) 949-2700
sbrown@bpslaw.com
sgalvao@bpslaw.com
dchen@bpslaw.com

*Counsel for Plaintiffs-Appellants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................. 1

ARGUMENT ................................................................................... 3

   I.   Gruma's Argument that the District Court Had Authority to Compel
      Arbitration Mischaracterizes the Order and the Governing Law ................. 3

      A.   The district court did not apply the Texas Arbitration Act.................... 3

      B.   *Harper* mandates that a court start with the application
          of the FAA before turning to state law ................................................. 5

      C.   *Bissonnette* confirms the SDDA is exempt from the FAA ................... 9

      D.   The district court's order cannot be affirmed under the
          Texas Arbitration Act.........................................................................10

   II.   The District Court Failed to Account for New Jersey's Public
      Policies When Conducting its Choice-of-Law Analysis............................14

   III. Gruma Has Not Shown Detrimental Reliance, Which Is Required to
      Bind the Individual Adlers to an Agreement They Did Not Sign. ..............19

   IV. The District Court's Delegation of Arbitrability Was Reversable Error,
      and This Court Should Not Decide Arbitrability and Scope *De Novo* .........23

CONCLUSION ...............................................................................26

COMBINED CERTIFICATIONS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998
    Year of Acct.*,
    618 F.3d 277 (3d Cir. 2010) ................................................................... 7

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .............................................................. 7, 15, 16

*Atalese v. U.S. Legal Servs. Grp., L.P.*,
    99 A.3d 306 (N.J. 2014) .......................................................... 17, 18

*Bacon v. Avis Budget Grp., Inc.*,
    959 F.3d 590 (3d Cir. 2020) ............................................................... 4

*Bissonnette v. LePage Bakeries Park St., LLC*,
    601 U.S. 246 (2024) ............................................................. 8, 9, 10

*Black v. Diamond Offshore Drilling, Inc.*,
    551 S.W.3d 346 (Tex. Ct. App. 2018) ........................................... 21, 22

*Carey v. FEC*,
    864 F. Supp. 2d 57 (D.D.C. 2012) ................................................... 5

*Chemetall US Inc. v. LaFlamme*,
    2016 WL 885309 (D.N.J. Mar. 8, 2016) ........................................... 17

*Coface Collections N.A. Inc. v. Newton*,
    430 F. App'x 162 (3d Cir. 2011) ................................................. 16, 17

*Coinbase, Inc. v. Suski*,
    144 S. Ct. 1186 (2024) ............................................................. 19, 23

*Diversant, LLC v. Carino*,
    2018 WL 1610957 (D.N.J. Apr. 2, 2018) ......................................... 17

*Doe v. Princess Cruise Lines, Ltd.*,
    657 F.3d 1204 (11th Cir. 2011) ...................................................... 25

*Eades v. Doe 1*,
2023 WL 9007839 (Tex. Ct. App. Dec. 29, 2023)...........................................21

*Fidelity Auto Grp., LLC v. Hargroder*,
2024 WL 1098244 (Tex. Ct. App. Mar. 14, 2024) ..........................................21

*Gilmartin v. KVTV-Channel 13*,
985 S.W.2d 553 (Tex. Ct. App. 1998)........................................................19, 20

*Harper v. Amazon.com Servs., Inc.*,
12 F.4th 287 (3d Cir. 2021).....................................................................*passim*

*Hickey v. Univ. of Pittsburgh*,
81 F.4th 301 (3d Cir. 2023)..............................................................................8

*Homa v. Am. Express Co.*,
494 F. App'x 191 (3d Cir. 2012)....................................................................16

*Homa v. Am. Express Co.*,
558 F.3d 225 (3d Cir. 2009)...........................................................15, 16, 17

*In re FirstMerit Bank, N.A.*,
52 S.W.3d 749 (Tex. 2001)..........................................................................3, 4

*In re Labatt Food Serv., L.P.*,
279 S.W.3d 640 (Tex. 2009)..............................................................................4

*In re Morgan Stanley & Co., Inc.*,
293 S.W.3d 182 (Tex. 2009)....................................................................21, 22

*In re Weekley Homes, L.P.*,
180 S.W.3d 127 (Tex. 2005)....................................................................20, 21

*Johnson v. Gruma Corp.*,
614 F.3d 1062 (9th Cir. 2010)........................................................................14

*Maravilla v. Gruma Corp.*,
783 F. App'x 392 (5th Cir. 2019).....................................................................23

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995)...........................................................................................12

iii

*Moon v. Breathless Inc.*,
868 F.3d 209 (3d Cir. 2017)............................................................. 18, 24, 25

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022)....................................................................... 19, 20, 21

*Moses H. Cone Mem'l Hosp. v. Mercury Hosp. Corp.*,
460 U.S. 1 (1983)......................................................................................7

*New Prime Inc. v. Oliveira*,
586 U.S. 105 (2019)................................................................................3, 8

*Palcko v. Airborne Express, Inc.*
372 F.3d 588 (3d Cir. 2004)....................................................................13

*Panzarella v. Navient Sols., Inc.*,
37 F.4th 867 (3d Cir. 2022)....................................................................19

*Parilla v. IAP Worldwide Servs., VI, Inc.*,
368 F.3d 269 (3d Cir. 2004)......................................................................4

*Peter v. Priority Dispatch, Inc.*,
681 F. Supp. 3d 800 (S.D. Ohio July 5, 2023)................................................13

*Plains All Am. Pipeline L.P. v. Cook*,
866 F.3d 534 (3d Cir. 2017)....................................................................11

*Porter Hayden Co. v. Century Indem. Co.*,
136 F.3d 380 (4th Cir. 1998)....................................................................12

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63, 71 (2010)..............................................................................9

*Ribadeneira v. New Balance Athletics, Inc.*,
65 F.4th 1 (1st Cir. 2023)....................................................................12, 13

*Rittmann v. Amazon.com, Inc.*,
971 F.3d 904 (9th Cir. 2020)...................................................................6, 13

*SKF USA Inc. v. Okkerse*,
992 F. Supp. 2d 432 (E.D. Pa. 2014)...........................................................15

iv

*Southwest Airlines Co. v. Saxon*,
  496 U.S. 450 (2022)........................................................................9, 10

*United States v. Ali*,
  508 F.3d 136 (3d Cir. 2007)..........................................................5, 19

**Statutes**

9 U.S.C. § 1 .........................................................................*passim*

9 U.S.C. § 2 ...................................................................4, 7, 11

9 U.S.C. § 4 .........................................................................9

N.J.S.A. § 10:5-12.7 ...........................................................18

N.J.S.A. § 56:10-1 ..............................................................8

Tex. Civ. Pracs. & Remedies Code § 171.021...............................*passim*

**Other Authorities**

Restatement (Second) of Conflict of Laws § 187(2)(b) ...................... 14, 15, 16, 17

## **INTRODUCTION**

Gruma does not defend many aspects of the district court's order compelling arbitration, effectively conceding it erred by: (1) holding that the threshold issue of the application of the exemption in § 1 of the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, was for an arbitrator to decide; and (2) failing to address the Adlers' argument that their statutory claims fell outside the scope of the arbitration provision in the parties' Store Door Distribution Agreement (SDDA). Those errors alone are sufficient grounds for reversal.

Instead, Gruma attempts to rewrite the district court's order, urging this Court to affirm holdings the district court did not make. First, rather than defending the decision to delegate the § 1 issue, Gruma claims—without any basis in the order whatsoever—the district court actually found that the Texas Arbitration Act (TAA), Tex. Civ. Pracs. & Remedies Code § 171.021, applies and provides an alternative basis for compelling arbitration. But it is clear from the order that the court applied the FAA and did not consider the TAA at all. Nor could the TAA provide an alternative ground for affirmance. Contrary to Gruma's assertion, this Court's precedent requires that the analysis start with the application of the FAA before deciding whether to compel arbitration under state law. And even if this Court holds (as it should) that the § 1 exemption applies, it cannot compel arbitration under the TAA because the parties did not specifically select that law as an alternative basis

for compelling arbitration, and the general governing-law provision selecting Texas law was insufficient to do so. In short, this Court should not reach out to affirm on a state-law ground not passed upon below and not supported by the SDDA.

Second, Gruma characterizes the order as delegating questions of the SDDA's arbitration provision's scope to the arbitrator even though it never mentioned scope. Gruma only half-heartedly defends that manufactured holding before asking this Court to decide scope "*de novo*." Again, this Court should not address an issue in the first instance. But, if it does, controlling precedent dictates that the Adlers' statutory claims fall outside the scope of the arbitration provision.

Gruma does address certain aspects of the order on their own terms, but its arguments cannot be reconciled with Supreme Court and Third Circuit precedent. In arguing that the district court correctly applied Texas substantive law, for example, Gruma urges an unduly rigid choice-of-law analysis that, contrary to this Court's precedent, fails to account for New Jersey's public policy interests. And in arguing that the individual Adlers can be bound to an arbitration agreement they did not sign, Gruma proposes an arbitration-specific rule of equitable estoppel contrary to recent Supreme Court precedent.

In short, Gruma's arguments do not alter the straightforward conclusion that the district court lacked statutory authority to compel arbitration and that the parties

did not form a valid arbitration agreement that can be enforced against the Adlers or applied to their statutory claims. This Court should reverse.

## **ARGUMENT**

## I.   **Gruma's Argument that the District Court Had Authority to Compel Arbitration Mischaracterizes the Order and the Governing Law.**

Gruma does not defend the district court's error in treating the threshold application of the FAA's § 1 exemption as a question "pertaining to arbitrability" for "an arbitrator," JA028 n.8, and not, as required, an "antecedent statutory inquiry" for a court, *New Prime Inc. v. Oliveira*, 586 U.S. 105, 112 (2019); Opening Br. 16-17. That alone warrants reversal.

Rather than defend this error, Gruma argues the order should be affirmed because the district court "correctly found that the TAA applies," providing an independent basis to compel arbitration, and that, regardless, the SDDA is not exempt from the FAA. Answering Br. 25-27, 40-43. Gruma is wrong on both fronts.

### A.   **The district court did not apply the Texas Arbitration Act.**

To minimize the district court's failure to consider the antecedent question of whether the FAA applies, Gruma claims it found instead that the TAA applies and compelled arbitration under that statute. Answering Br. 27, 40-41. The court found no such thing. Its decision does not mention the TAA once or rely on cases interpreting the TAA. Instead, it relied on cases interpreting the FAA. Opening Br. 17. That's so even for the Texas cases it cited. *See* JA021-22 (citing *In re FirstMerit*

3

*Bank, N.A.*, 52 S.W.3d 749, 753-54 (Tex. 2001) (holding that contract was "subject to the FAA"); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643-44 (Tex. 2009) (same)). In short, the court erroneously failed to decide whether the SDDA was exempt under § 1 of the FAA, but then decided arbitration should be compelled based on cases interpreting the FAA. That error cannot be fixed by Gruma's after-the-fact recharacterization.

Gruma's argument to the contrary relies solely on the district court's decision to "apply Texas law to determine whether the SDDA's arbitration provision is enforceable." Answering Br. 40 (quoting JA021). But that statement is entirely consistent with the district court compelling arbitration under the FAA, which requires that questions about the formation and enforceability of an arbitration agreement be resolved under state contract law. *See* 9 U.S.C. § 2 (arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract"); *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599-600 (3d Cir. 2020) (under FAA, contract formation is a question of "state-law principles") (citation omitted); *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 275-76 (3d Cir. 2004) (under FAA, whether arbitration agreement "is unenforceable" is a question of "state contract law") (citation omitted). So, consistent with its conclusion that Texas law applies to the SDDA, the district court applied Texas contract law regarding non-signatories to determine whether the

4

parties formed an agreement, JA023-24, and regarding unconscionability to determine whether that agreement was enforceable, JA027 n.7. That routine application of state contract law under the FAA does not mean the court invoked the TAA *instead of the FAA* as its source of authority to compel arbitration, particularly where it never mentioned the TAA or cited cases applying it.

### B. *Harper* mandates that a court start with the application of the FAA before turning to state law.

Even if the district court did compel arbitration under the TAA, Gruma is wrong that it could do so without first considering the application of the FAA. Answering Br. 27, 40-42. As the Adlers have explained (Opening Br. 18), when a party argues an agreement is exempt under § 1, the court must first evaluate whether the exemption applies because whether it does affects the court's authority to compel arbitration. *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 293, 296 n.8 (3d Cir. 2021).[1] This is a "question of law that typically can be resolved without facts outside the well-pleaded complaint." *Id.* at 293. Only if it requires factual development

---

[1] Gruma claims the Adlers waived any *Harper*-based argument by "not "rais[ing] this case below." Answering Br. 7, 28. But "failure to cite a specific case" is "not the same" as "[f]ailure to raise an issue," *Carey v. FEC*, 864 F. Supp. 2d 57, 63 (D.D.C. 2012), and the Adlers asked the court to decide whether the FAA applied to the SDDA, *see* Pls.' Opposition, ECF 14, at 25-26. They had no reason to preemptively cite *Harper* just in case the court failed to address their § 1 argument and compelled arbitration without confirming its authority to do so. Moreover, "there can be no waiver . . . of the Judge's duty to apply the correct legal standard." *United States v. Ali*, 508 F.3d 136, 144 n.9 (3d Cir. 2007).

should the court assume the FAA does not apply and determine whether "any applicable state law" provides authority for compelling arbitration. *Id.* at 296. If there is no applicable state law, the court then resolves whether the FAA applies, including through discovery. *Id.* And if neither federal nor state arbitration law applies, the court lacks authority to compel arbitration. *See Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 920-21 (9th Cir. 2020).

Gruma claims the district court followed *Harper* "precisely." Answering Br. 26. But to support this argument, it misleadingly quotes *Harper* as holding that "state law arbitration questions must be resolved *before* turning to questions [related to the FAA]." *Id.* (quoting *Harper*, 12 F.4th at 295-96) (emphasis, alteration by Gruma).

Those brackets matter. Rather than questions "related to the FAA" generally, *Harper* actually says "questions of fact and discovery." 12 F.4th at 295-96. It also says that the state-law analysis is "step two." *Id.* at 296. At "step one," the court must decide whether the exemption applies as a matter of law or whether there *are* questions of fact and discovery that necessitate moving to step two. *Id.* And again, factual disputes are the exception when it comes to § 1's application. *Id.* at 293. So, a court will typically start with the application of the FAA and then find that no discovery is needed. That should have happened here, where uncontroverted facts in the record establish the application of the exemption. *See infra* Part I(C). Instead, the district court ignored *Harper*'s steps, neither addressing whether the FAA applied at

6

step one nor whether the TAA applied at step two. Instead, it seems to have assumed the FAA applied and then analyzed the enforceability of the agreement using FAA case law.

Not only is first addressing the FAA exemption required by this Court's precedent, it's also necessary to avoid preemption problems. *See* Opening Br. 19. The FAA applies to all contracts within its scope. *See* 9 U.S.C. §§ 1-2; *Moses H. Cone Mem'l Hosp. v. Mercury Hosp. Corp.*, 460 U.S. 1, 24 (1983) (Section 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."). As such, parties to such contracts cannot "opt out of FAA coverage in its entirety." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Acct.*, 618 F.3d 277, 288 (3d Cir. 2010) (cleaned up). Thus, unless the § 1 exemption applies or an agreement falls outside the scope of § 2, the FAA preempts state laws that conflict with it. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343-44 (2011). When such preemption is possible, the court must decide whether the FAA applies before compelling arbitration under state law. Otherwise, it would not be clear which rules govern the decision to compel arbitration.[2]

---

[2] *Harper*'s instruction that a court "decide state law claims, including state arbitrability, even where the [FAA] may apply," 12 F.4th at 291, was necessarily premised on its assumption that "state and federal law here complement, rather than conflict," *id.* at 294. The Court had no occasion to delve into the particulars of

Gruma's arguments confirm that addressing the FAA first is necessary. For example, the New Jersey Franchise Practices Act (NJFPA), N.J.S.A. § 56:10-1, *et seq.*, includes a presumption against arbitration clauses in franchise agreements that both parties agree would be preempted by the FAA. Answering Br. 49-50; Opening Br. 35 n.5. But preemption would not be a problem if the SDDA is exempt under § 1. Then, the Adlers would be able to argue that the SDDA can be construed as a franchise agreement and that, under the NJFPA, the arbitration provision is unenforceable.[3]

---

specific state arbitration rules that may conflict with the FAA, instead remanding to the district court to consider in the first instance whether "state law provides grounds for arbitration." *Id.* at 295. If preemption is a risk, however, the court must confirm whether the FAA applies before applying state arbitration law, even if that requires discovery.

[3] Gruma argues for the first time on appeal that the Adlers cannot both bring their NJFPA claim and argue the SDDA is exempt from the FAA because, it says, "Section 1 of the FAA simply does not apply to franchise agreements." Answering Br. 49. This argument is not only waived, it's also wrong. Whether an agreement is a "contract of employment" under § 1 turns not on formalities but on the nature of the worker's work. *See New Prime*, 586 U.S. at 121; *id.* at 114, 118 (exemption applied where contract at issue labeled workers "independent contractors" and was between two business entities). In fact, the Supreme Court recently held that the exemption could apply to a franchise agreement between a driver who incorporated as a business entity and a baked-goods company without commenting on the type of contract at issue. *See Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 252-53 (2024). Moreover, because plaintiffs may advance alternative arguments, it's no barrier that the Adlers argue both that they were Gruma's employees and, alternatively, that they were Gruma's franchisees. *See Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 315 (3d Cir. 2023).

8

As another example, Gruma defends the district court's decision to delegate questions of arbitrability. Answering Br. 39. But that was based on case law interpreting language in § 4 of the FAA, which materially differs from the TAA. *See* JA022 (citing, *inter alia*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010)). *Compare* 9 U.S.C. § 4, *with* Tex. Civ. Pracs. & Remedies Code § 171.021. If the FAA did not apply, the FAA-based rule that a specific challenge to the delegation clause is required would not apply either. *See infra* 19 n.7.

### C. *Bissonnette* confirms the SDDA is exempt from the FAA.

Had the court addressed the § 1 exemption instead of ruling it was for the arbitrator to decide, it would have found that the SDDA is exempt. Opening Br. 19-22. Gruma counters that under new Supreme Court precedent, a worker must be "actively . . . engaged in transportation of goods across borders," Answering Br. 41 (quoting *Bissonnette*, 601 U.S. at 253), suggesting either that the Adlers themselves needed to cross state lines or that they were not sufficiently "actively engaged in" transportation work. *Id.* at 41-42. But *Bissonnette* did not create a "new" standard. It merely quoted the standard from *Southwest Airlines Co. v. Saxon*, 496 U.S. 450 (2022), which forecloses both arguments. *See* 601 U.S. at 256 (quoting *Saxon*, 596 U.S. at 458).

First, *Saxon* squarely held that workers need not cross state lines to be engaged in interstate commerce. 596 U.S. at 458. Nothing in *Bissonnette* alters that holding.

Indeed, *Bissonnette* expressly declined to reach § 1's application to last-mile drivers, like the delivery drivers in that case, who travel only intrastate, 601 U.S. at 256, leaving undisturbed the growing consensus that last-mile drivers like the Adlers are engaged in interstate commerce under § 1 even if they never cross state lines. *See* Opening Br. 20-21 (listing cases).

Second, while Gruma diminishes the Adlers' transportation work as "incidental" to their other work, it did not rebut Charles's declaration that he and his son spent a "large component" of their time transporting Gruma goods on the last leg of their interstate journey. JA124 ¶ 25. Under *Saxon*, that's enough. In *Saxon*, the Court relied solely on the "uncontroverted declaration" of the worker that she "frequently"—"up to three shifts per week"—loaded and unloaded cargo traveling in interstate commerce. 596 U.S. at 456.

In short, *Bissonnette* and *Saxon* confirm that the Adlers were, as a matter of law, transportation workers engaged in interstate commerce such that the district court lacked authority under the FAA to compel arbitration of their dispute.

### D.    The district court's order cannot be affirmed under the Texas Arbitration Act.

Gruma argues that, if the FAA exemption applies, the TAA provides an "[i]ndependent [b]asis" for affirmance. Answering Br. 25. Because the district court applied FAA case law and principles throughout its decision, and never once invoked the TAA, Gruma essentially asks this Court to re-analyze each issue under

10

the TAA, a task that should be undertaken (if at all) by the district court first. *See Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 545 (3d Cir. 2017) (courts generally "decline to consider an issue not passed upon below") (citation omitted). But, more importantly, there is no basis in the SDDA for compelling arbitration under the TAA. *See Harper*, 12 F.4th at 296.

The SDDA's governing-law provision reads:

This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. The Federal Arbitration Act, 9 U.S.C. § 1 et seq. shall also apply as needed to uphold the validity or enforceability of the arbitration provisions of this Agreement.

JA098.[4] Under this provision, Texas law provides the rules governing the SDDA generally, but the FAA "also" comes into play "as needed" to provide the statutory authority to enforce the arbitration provisions specifically. Opening Br. 23-24.

Gruma focuses on the word "also," essentially claiming that word means the court must apply Texas law, including the TAA, and then, only if the arbitration provisions are not enforceable under the TAA should a court apply the FAA. Answering Br. 12. That interpretation flips the applicable rules on their head. Both because the FAA applies to all contracts within § 2 and outside § 1, and because of

---

[4] Gruma criticizes the Adlers for not quoting the full governing-law provision. Answering Br. 11-12. That's silly. The Adlers quoted it in the Background section of their brief and then analyzed the relevant language in the Argument section.

11

its potential preemptive effect, the FAA is the necessary starting place for questions of arbitration, not a backup to state law. *Supra* Part I(B).

Moreover, the word "also" does not override the consensus that more than a generic choice-of-law provision is needed to invoke a state's arbitration code. *See Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 382 (4th Cir. 1998) (explaining that, in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995), the Supreme Court "squarely rejected the argument that a federal court should read a contract's general choice-of-law provision as invoking state law of arbitrability and displacing federal arbitration law"). Gruma focuses on the fact that *Mastrobuono*'s choice-of-law provision was not "linked" to the arbitration agreement by the word "also." Answering Br. 14. But Gruma also concedes that the first sentence of the provision here (the only sentence to invoke Texas law) is, as in *Mastrobuono*, a "generic choice of law provision." Answering Br. 14 n.5 (citation omitted); *see Mastrobuono*, 514 U.S. at 58-59 (provision stating that agreement "shall be governed by the laws of the State of New York"). Such a provision is indisputably insufficient to invoke Texas's arbitration law as distinct from its substantive law. *See Mastrobuono*, 514 U.S. at 60; *Ribadeneira v. New Balance Athletics, Inc.*, 65 F.4th 1, 13 (1st Cir. 2023) (rejecting argument that choice-of-law provisions "demonstrate[d] that the parties intended for Massachusetts law—rather

than the FAA—to govern all aspects of the arbitration process" because parties had not "so agreed explicitly") (cleaned up).

Parties can contract to select state arbitration law as a backup or supplement to the FAA, but their intent must be clear. So, in *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 590 (3d Cir. 2004), the choice-of-law provision read: "To the extent that the [FAA] is inapplicable, Washington law pertaining to agreements to arbitrate shall apply." Relying on that express selection, this Court enforced the parties' arbitration agreement under Washington's arbitration law because the contract was exempt under § 1 of the FAA. *Id.* at 596. Compare that selection of state law with the provision in *Rittmann*, which, like the SDDA here, included a generic choice-of-law provision that "[t]hese Terms are governed by the law of the state of Washington" and then separately invoked the FAA, and only the FAA, as to the arbitration provisions specifically. 971 F.3d at 920. The Ninth Circuit concluded it was "not clear that the parties intended to apply Washington law to the arbitration provision in the event the FAA did not apply," and therefore "reject[ed]" the "alternative [state-law] bases to compel arbitration." *Id.* at 920-21; *see also Peter v. Priority Dispatch, Inc.*, 681 F. Supp. 3d 800, 802 n.3 (S.D. Ohio July 5, 2023), *appeal docketed* No. 23-3637 (6th Cir.) (rejecting defendant's "alternative" state-law basis for compelling arbitration because contract did not reflect intent to select "state rules of arbitration") (citation omitted).

13

Nowhere does the SDDA refer to the TAA (or any state arbitration code), even though Gruma has expressly invoked state arbitration rules in other contracts with drivers. *See Johnson v. Gruma Corp.*, 614 F.3d 1062, 1066-67 (9th Cir. 2010) (agreeing with Gruma that California Arbitration Act (CAA) standards applied because agreement required that arbitration be "conducted and subject to enforcement pursuant to [the CAA]"). Here, by contrast, the sentence specifically directed at the SDDA's "arbitration provisions" invokes only the FAA. So, as written, the parties selected Texas substantive law to govern the SDDA generally and the FAA to provide the sole authority for enforcing the arbitration provisions.

## II. The District Court Failed to Account for New Jersey's Public Policies When Conducting its Choice-of-Law Analysis.

Because the district court lacked authority to compel arbitration under either the FAA or state law, this Court need not reach the parties' dispute about the substantive law that applies to the SDDA and its arbitration provisions. But if it does, New Jersey—not Texas—law should apply. In defending the district court's erroneous conclusion that Texas law applies, Gruma urges an unduly formalist approach to the analysis under the Restatement (Second) of Conflict of Laws § 187(2)(b) that cannot be squared with this Court's precedent.

Gruma argues that the district court correctly required the Adlers to prove in isolation that "New Jersey has a materially greater interest than Texas in the outcome of this dispute" before it could move to the second "element" and find that

14

application of Texas law was contrary to a fundamental New Jersey public policy. Answering Br. 17 (quoting JA015). The Restatement test is not so rigid. As this Court has made clear, and other circuits routinely emphasize, these factors inform each other: A state can have a "materially greater interest . . . in the determination of the particular issue," Rest. (2d) of Conflict of Laws § 187(2)(b), in part *because* it has a fundamental public policy regarding that issue. Thus, the materially-greater-interest inquiry under § 187(2)(b) considers not just the parties' contacts with the states in question *but also* those states' respective public policies *and* the source of law for the underlying claims. *See Homa v. Am. Express Co.*, 558 F.3d 225, 232-33 (3d Cir. 2009), *abrogated on other grounds by Concepcion*, 563 U.S. 333 (2011); Opening Br. 38 (listing cases). So, the Adlers agree "it is not enough to assert that New Jersey has a greater interest simply because the application of Texas law runs contrary to a fundamental New Jersey policy." JA019 (quoting *SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 441 (E.D. Pa. 2014)) (cleaned up); Answering Br. 23. But it is also not enough to assert that New Jersey does *not* have a materially greater interest by focusing solely on the parties' contacts with each state, as the district court did here, without examining the basis for the claims or the states' respective public policies. *See Homa*, 558 F.3d at 232.

Gruma's only response is that *Homa* has been overruled. *Id.* 24. Yes, *Concepcion* abrogated one of *Homa*'s holdings by concluding that the FAA

preempts the enforcement of state-law prohibitions on class-action waivers. 563 U.S. at 346-48. But *Concepcion* did not impact *Homa*'s explanation of the choice-of-law analysis. In fact, in its post-*Concepcion* consideration of the case, this Court did not disturb the conclusion that, under § 187(2)(b), New Jersey law would apply. *Homa v. Am. Express Co.*, 494 F. App'x 191, 193 n.1 (3d Cir. 2012).[5]

Gruma also cites *Coface Collections N.A. Inc. v. Newton*, 430 F. App'x 162 (3d Cir. 2011), to accuse the Adlers of overlooking the role that "geographical ties" play in the analysis, Answering Br. 19, 23. Again, the Adlers do not dispute that geographical ties play an important role in the analysis or that Gruma has strong ties to Texas. But that is not the only factor the court should have considered when determining which state has a materially greater interest in this dispute. Indeed, even *Coface* considered the states' respective public policies as part of the materially-greater-interest analysis, pointing to Delaware public policy as reflected in a statute providing that Delaware choice-of-law provisions "shall be enforced whether or not there are other relationships to this state" to conclude that Delaware had a "substantial interest" in the dispute. 430 F. App'x at 167-68. Thus, even Gruma's own case considers more than geographic ties when analyzing a state's interests.

---

[5] Nor is *Homa* irrelevant because it involved class allegations while the Adlers bring individual claims. *See* Answering Br. 24. Again, *Homa* models how to conduct the choice-of-law analysis regardless of the facts of the case or the policies at issue.

Moreover, to the extent *Coface* conflicts with *Homa*, an unpublished decision should not be read to abrogate *Homa*'s clear description of the analysis under § 187(2)(b).[6]

Enforcing the SDDA's arbitration provision and forcing the Adlers to arbitrate their claims would violate three fundamental New Jersey public policies: the requirement that any waiver of the right to have claims heard in court be clear and unambiguous; the presumption against arbitration of statutory rights; and the presumption against arbitration clauses in franchise agreements. Opening Br. 28-36. Gruma conflates these contract-formation policies with an argument the Adlers don't advance: that applying Texas law "prevent[s] [them] from asserting in arbitration any claims arising under New Jersey statutes." Answering Br. 24 (cleaned up); JA020. The Adlers do not dispute that, should Texas law apply to the SDDA, they could still bring their underlying New Jersey claims, whether in arbitration or court. But, under New Jersey law, they should not be subjected to arbitration at all, most principally because the SDDA's provision flunks New Jersey's clear-notice

---

[6] The district court (JA017-18) and Gruma (Answering Br. 20-22) also cite unpublished district court cases that relied in part on *Coface* to enforce choice-of-law provisions. But, like Gruma, those cases wrongly assert that the materially-greater-interest analysis focuses exclusively "on the dispute-related contacts or relationships with the relevant states" and "not state policy." *See Diversant, LLC v. Carino*, 2018 WL 1610957, at *3 (D.N.J. Apr. 2, 2018) (cleaned up). And at least one did consider, albeit to a limited extent, the states' interests in enforcing their respective policy interests, including "in protecting the confidential information of [] residents," as part of the materially-greater-interest-inquiry. *Chemetall US Inc. v. LaFlamme*, 2016 WL 885309, at *8 (D.N.J. Mar. 8, 2016).

requirement. *See Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 315 (N.J. 2014); Opening Br. 28-30.

Gruma also misunderstands the Adlers' reference to a 2019 prohibition on prospective waivers of statutory rights and remedies. N.J.S.A. §§ 10:5-12.7(a), (b); Opening Br. 32. The Adlers agree this prohibition, which is not retroactive, doesn't apply to the SDDA. Even so, it is strong evidence of New Jersey's fundamental policy against arbitrating statutory claims, as reflected in its longstanding exacting requirement that any waiver of the right to bring statutory claims in court be clear and unambiguous. *See Moon v. Breathless Inc.*, 868 F.3d 209, 214 (3d Cir. 2017) (under New Jersey law, for arbitration provision to cover statutory claims, provision must do so expressly); Opening Br. 33-34.

Simply put, the district court failed to properly consider New Jersey's public policies as part of its materially-greater-interest inquiry and misconstrued those policies as part of its truncated fundamental-policy inquiry. Under the correct standard, New Jersey law should apply here, because the contract was made, performed, and terminated in New Jersey, the claims are a combination of New Jersey and federal law, and New Jersey will suffer greater impairment of its fundamental policies if Texas law is applied.

### III. Gruma Has Not Shown Detrimental Reliance, Which Is Required to Bind the Individual Adlers to an Agreement They Did Not Sign.

Gruma next urges this Court to affirm the district court's erroneous conclusion that an arbitration agreement was formed between Gruma and the individual Adlers, who did not sign the SDDA, under the "direct benefits" estoppel doctrine.[7] But, as the Adlers have explained, the arbitration-specific version of equitable estoppel advanced by Gruma and applied below is no longer good law following *Morgan v. Sundance, Inc.*, which clarified that "courts are not to create arbitration-specific procedural rules." 596 U.S. 411, 419 (2022); Opening Br. 41-42, 44-45.[8] Instead, under Texas's general equitable estoppel standard, Gruma must show "detrimental reliance." *See Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 558 (Tex. Ct. App.

---

[7] The Supreme Court recently rejected the district court's suggestion that this issue was for the arbitrator to decide because it "relates to the parties' agreement as a whole, not specifically to the parties' agreement to arbitrate." *See* JA023. A party is not required to "challenge *only* the arbitration or delegation provision. Rather, where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1194 (2024). Here, the argument that the individual Adlers cannot be bound to an agreement they did not sign applies "equally" to the arbitration agreement and the "whole contract," and thus is a question for the court. *Id.*

[8] Gruma claims the Adlers waived the argument that the arbitration-specific estoppel doctrine has been abrogated by *Morgan* by not raising it below. *See* Answering Br. 47 n.21. Again, "there can be no waiver . . . of the Judge's duty to apply the correct legal standard." *Ali*, 508 F.3d at 144 n.9; *see also Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 877 n.11 (3d Cir. 2022) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.") (citation omitted).

1998); Opening Br. 42 (citing additional cases). Completely ignoring this element, Gruma fails to make that showing here.

Instead, Gruma dismisses *Morgan* as "wholly inapposite" because it addressed whether prejudice is a required element of waiver, and the issue here is not waiver. Answering Br. 46-47. Gruma fundamentally misunderstands *Morgan*, which held that the FAA prohibits courts from making *any* arbitration-specific rule, not only regarding waiver. *See* 596 U.S. at 419 (The FAA "is a bar on using custom-made rules[] to tilt the playing field in favor of (or against) arbitration."). Thus, just as the FAA prohibited the *Morgan* court from adding a prejudice requirement only to waiver cases involving arbitration, the district court here could not remove the detrimental-reliance requirement only for equitable estoppel cases involving arbitration.

True, the Texas Supreme Court has not explained how state courts should address waiver or equitable estoppel under state law post-*Morgan*. Answering Br. 47. But *Morgan* obviously binds this federal Court and prohibits it from applying an arbitration-specific equitable estoppel rule where the FAA applies. And even if the FAA doesn't apply, the Texas cases forgoing a detrimental-reliance requirement for equitable estoppel in arbitration cases are grounded in federal cases that have now been abrogated by *Morgan*. *See* Opening Br. 43-44. Indeed, the goal of Texas courts in adopting the rule in the first place was "to keep [state law] as consistent as possible

with federal law." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005). So, it is unlikely the Texas Supreme Court would adopt a rule contrary to *Morgan*.

Gruma cites two Texas Court of Appeals decisions, Answering Br. 47, but neither establishes that *Morgan* does not apply under Texas law. Indeed, neither court even decided whether *Morgan* applied because it was not outcome-determinative. *Fidelity Auto Grp., LLC v. Hargroder*, 2024 WL 1098244, at *8 n.3 (Tex. Ct. App. Mar. 14, 2024) (finding "it unnecessary to decide" whether prejudice is required under Texas law post-*Morgan*); *Eades v. Doe 1*, 2023 WL 9007839, at *4 n.1 (Tex. Ct. App. Dec. 29, 2023) (declining to "consider whether a party is required to establish prejudice in light of *Morgan*"). Moreover, in *Eades*, although the court noted that "it remains an open question how our supreme court will interpret and apply *Morgan* to Texas state law," it nonetheless explained that its third-party beneficiary analysis was consistent with *Morgan* because it applied a generally applicable rule, not one specific to arbitration agreements. 2023 WL 9007839, at *3, 4 n.2.

In short, *Morgan* prohibits this Court from applying an arbitration-specific equitable estoppel rule without a detrimental-reliance requirement (which, again, Gruma ignores). But even if detrimental reliance is not required, Gruma is wrong that the Adlers' claims depend on benefits conferred by the SDDA. "A claim does not seek a direct benefit from [a] contract if liability under the claim 'arises from

general obligations imposed by state law, statutes, torts, and other common law duties, or federal law.'" *Black v. Diamond Offshore Drilling, Inc.*, 551 S.W.3d 346, 355 (Tex. Ct. App. 2018) (quoting *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 184 n.2 (Tex. 2009)) (finding direct benefits inapplicable where plaintiff brought only statutory and common-law claims and "there are no terms within the Agreement for which appellant must rely upon in order to pursue [those] claims"). Here, the Adlers' statutory and common-law claims do not depend on any term of the SDDA being enforced. *See infra* 24-25.

Gruma's examples are not to the contrary. First, Gruma claims the Adlers seek to benefit from the SDDA because they seek damages arising out of the "wrongful termination of the SDDA." Answering Br. 45 (emphasis omitted). But the Adlers seek those damages in connection with their statutory retaliation claim (that Gruma terminated their employment because the Adlers engaged in protected activity), not any contractual protection in the SDDA against termination or retaliation. JA074 (Compl. at 45(g)). Second, Gruma emphasizes that the Adlers seek rescission of only "portions" of the SDDA as being against public policy or unconscionable, arguing that means they're seeking to benefit from enforcement of the remainder. Answering Br. 45. But just because the SDDA includes some valid provisions does not mean the Adlers seek a benefit from those provisions. Finally, Gruma relies on the Adlers' good faith and fair dealing claim. *Id.* at 46. But that claim necessarily involves an

"implied" duty that is *not* a term of the SDDA. Under any standard, then, the arbitration agreement should not be enforced against the individual Adlers.

## IV. The District Court's Delegation of Arbitrability Was Reversable Error, and This Court Should Not Decide Arbitrability and Scope *De Novo*.

Gruma barely defends the district court's decision to *sua sponte* enforce the SDDA's purported delegation clause. It fails to explain how the court had authority to enforce a provision no party raised or sought to enforce, or to refute the cases cited by the Adlers. Answering Br. 39; *see* Opening Br. 49. Instead, it cites *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 395 (5th Cir. 2019) (per curiam), in which Gruma *did* invoke the delegation clause and so does not help here, *see* Opening Br. 49. Moreover, Gruma ignores the district court's erroneous holding that the Adlers' unconscionability challenge was for the arbitrator because it "pertains to the entire contract, not just the arbitration agreement or the delegation clause." *See* JA027. With good reason: *Suski* confirms the court got it wrong. *See* 144 S. Ct. at 1194; *supra* 19 n.7.

Rather than defend the district court's decision to delegate arbitrability, Gruma says this Court should just decide "the question of arbitrability *de novo*." Answering Br. 40. It's not clear what Gruma means because it does not discuss or defend the district court's limited analysis of the one arbitrability issue— unconscionability. Instead, Gruma focuses on the scope of the arbitration agreement, asking the Court to decide "whether the claims asserted by Plaintiffs are covered by

the SDDA's arbitration clause." *Id.* at 39. But the district court neither held that scope was an issue for the arbitrator nor addressed scope itself. Opening Br. 52. That was error, and this Court should remand for the district court to address scope in the first instance.

If the Court does address scope, it should find that the Adlers' statutory claims are not covered by the arbitration agreement, which applies only to claims "arising out of or relating to this Agreement." JA96 ¶ 15(i)(ii). This Court has held that similar language specifically referencing the parties' agreement is insufficient to encompass statutory wage claims. *See* Opening Br. 52 (citing *Moon*, 868 F.3d at 217-18). Gruma attempts to distinguish *Moon* because the agreement there applied to claims "under this agreement," which differs from the SDDA's language. Answering Br. 31 (quoting *Moon*, 868 F.3d at 212). But *Moon* itself explained there is no "significant difference" between "under" and "arising out of, or relating to" because both "point to disputes related to the agreement at issue." 868 F.3d at 216. *Moon* thus controls here.[9]

Gruma also argues that, because the SDDA sets many of the terms of the Adlers' relationship with Gruma, and because the Adlers describe those terms in

---

[9] Gruma spills significant ink arguing that the Adlers's non-statutory claims are within the scope of the arbitration agreement. Answering Br. 37-39. But the Adlers have only argued that their statutory claims, not their common-law claims, are outside the scope of that agreement. *See* Opening Br. 52; Pls.' Opposition, ECF 14, at 16-22.

24

their Complaint, their claims necessarily "arise out of" the agreement. Answering Br. 32-35. This Court rejected the same argument in *Moon*, explaining that "[d]espite the contract's employment provision, Moon's claims still *arise under* [federal] and New Jersey statutes, not the agreement itself." 868 F.3d at 218 (emphasis in original). So too here. Like the *Moon* plaintiff, the Adlers' "claim here is that [they] should receive certain wages and benefits as an employee under [state and federal law] despite [their] agreement stating otherwise." *See id.* That is, even if the parties performed their obligations under the SDDA perfectly—or did not have a written agreement at all—the Adlers would still have statutory claims against Gruma. *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1219-20 (11th Cir. 2011) (finding that claims did not "relate to" or "arise from" employment agreement where "[t]he parties could each have fulfilled all of their duties under the [] agreement . . . and the parties still be embroiled in the dispute"). Thus, because the Adlers' claims arise under New Jersey and federal statutes, *not* the SDDA, their statutory claims fall outside the scope of the arbitration agreement. *Moon*, 868 F.3d at 218.

//

//

//

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the district court's order

compelling arbitration and dismissing the complaint.


Dated: June 11, 2024                                    Respectfully submitted,

/s/ Hannah M. Kieschnick
Hannah M. Kieschnick
Public Justice
475 14th St., Ste. 610
Oakland, CA 94612
(510) 622-8150
hkieschnick@publicjustice.net

Shelby Leighton
PUBLIC JUSTICE
1620 L St. NW, Ste. 630
Washington, DC 20036
(202) 797-8600
sleighton@publicjustice.net

/s/ Stephen J. Brown
Stephen J. Brown
Susan E. Galvão
David Chen
BLEAKLEY PLATT & SCHMIDT, LLP
One North Lexington Ave.
White Plains, NY 10601
(914) 949-2700
sbrown@bpslaw.com
dchen@bpslaw.com

## COMBINED CERTIFICATIONS

*Bar Membership.* I am a member of the bar of the United States Court of Appeals for the Third Circuit.

*Word limit.* This document complies with the type-volume requirements of Fed. R. App. P. 32(a)(7)(B) because it contains 6,491 words as calculated with the word-counting feature of Microsoft Office, excluding those parts of the brief exempted by Fed. R. App. P. 32(f).

*Typeface and typestyle.* This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Times New Roman 14-point font, which is a proportionally spaced typeface.

*Identical copies.* The text of the electronic brief is identical to the text in the paper copies.

*Virus check.* The electronic brief has been scanned for viruses with Bitdefender Endpoint Security software. No virus was detected by the software.

Dated: June 11, 2024          /s/ Hannah M. Kieschnick
                                  Hannah M. Kieschnick
                                  *Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2024, the foregoing was served via the Court's electronic case management system upon all counsel of record.

Dated: June 11, 2024

/s/ Hannah M. Kieschnick
Hannah M. Kieschnick
*Counsel for Plaintiffs-Appellants*